IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES R. O'BRIEN,  No. 2:14-cv-0702-JAM-CMK-P

    Plaintiff,

  vs.  FINDINGS AND RECOMMENDATION

FRED FOULK, et al.

    Defendants.

_____/

    Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion to dismiss (Doc. 38). Plaintiff filed an opposition to the motion (Doc. 42), and defendants filed a reply (Doc. 45).

**I. BACKGROUND**

    This action proceeds on plaintiff's second amended complaint. The court previously summarized his claims as follows:

> In his second amended complaint, plaintiff alleges his Eighth Amendment rights are been violated by the defendants' failure to provide adequately nutritional food. Specifically, he alleges the defendants have instituted and/or ignored policies to utilize non-approved food substitutions. These non-approved food substitutions, which deviated from the CDCR standardized menu guidelines, have denied him the proper amount of vitamins and

nutrients to maintain his health as a diabetic.

(See Order, Doc. 22).

## II. MOTION TO DISMISS

Defendants brings this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust administrative remedies, failure state a claim, Eleventh Amendment immunity, and mootness. Defendant argues plaintiff failed to properly exhaust his administrative remedies prior to filing this case; the facts alleged fail to state a claim for deliberate indifference; defendant Foulk is not the proper defendant; the Eleventh Amendment bars plaintiff's official-capacity claim for damages; and plaintiff's claim for injunctive relief is moot. Plaintiff counters that supervisors can be held liable when culpable action or inaction can be attributed to them, the defendants failed to refute plaintiff's claim, and that he exhausted his administrative remedies, but was not required to plead exhaustion in his complaint.

### A. Standards

Rule 12(b)(6) provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). Legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972). However, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic

Corp. v. Twombly, 550 U.S. 662, 544, 555-57 (2007).

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Thus, a court may take judicial notice of court records. See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980). Similarly, a court may take judicial notice of records of press releases and material posted on government websites when neither party disputes either the website's authenticity or the accuracy of the information displayed. See In re American Apparel, Inc. Shareholder Litigation, 855 F.Supp.2d 1043, 1062 (C.D. Cal. 2012); Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 999-00 (9th Cir. 2010).

An unenumerated Rule 12(b) motion to dismiss is not the preferred procedural device for raising the issue of exhaustion. See Albino v. Baca, 747 F.3d 1162, 1168 (9th Cir. April 3, 2014) (en banc). A defendant may raise the issue of exhaustion in a motion to dismiss only in the rare event the failure to exhaust is clear on the face of the complaint. Id. Otherwise, the issue of exhaustion should be raised in a motion for summary judgment. Id. at 1168-69.

If a motion to dismiss is granted, leave to amend must generally be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr.,

66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

The Federal Rules of Civil Procedure require that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.

### 1. Supervisory Liability

First, to the extent defendant Foulk contends he cannot be held liable solely on the basis of his position as Warden, he is correct. Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Iqbal, 129 S.Ct. at 1949. Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v.

4

Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 129 S.Ct. at 1948.

Plaintiff alleges defendant Foulk was the Warden at High Desert State Prison (HDSP) during the relevant time period involved in this case. Reading the complaint liberally, plaintiff alleges that both of the defendants either instituted new policies or ignored current policies to utilize non-approved food substitutions, which deviated from the CDCR standards. However, defendant Foulk has provided documentation to show that he was not the Warden at HDSP at the time relevant to this case.[1] Warden Foulk became Acting Warden in 2013, and then Warden in 2014. Thus, he contends could not have been personally responsible for instituting or implementing any food policy during 2012, the relevant year at issue in this case. Plaintiff contends that a supervisor can be liable under § 1983 if the supervisor set in motion a series of acts by others which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury, or where a supervisor's own culpable action or inaction in the training, supervision, or control of his subordinates establishes supervisory liability. In addition, he contends that defendant Foulk was Warden in early 2013, during the time he was exhausting his administrative remedies.

As set forth above, in order for a supervisor to be liable, the complaint must set forth facts indicating that the supervisor was personally involved in the constitutional violation. The alleged violation in this case, the modification or substitution of non-approved food,

---

[1] Defendant's request that the court take Judicial Notice of the press release as to defendant Foulk's appointment and information as to the current warden at HDSP should be granted as it meets the requirements set forth above.

5

occurred sometime in 2012.[2] While defendant Foulk may have been appointed Associate Warden in 2013 during the time plaintiff was proceeding through the time he was exhausting his administrative remedies, he was clearly not in that position when the alleged violation occurred. As an individual can only be personally liable for his own actions, instituting a new policy or failing to properly implement a policy can only occur while that individual is in the position to do so, here as Acting Warden of the institution. In this case, defendant Foulk did not hold the position plaintiff has alleged at the time of the alleged violation. Nor does plaintiff contend he was otherwise in the position to have any control over the food policies. Therefore, he cannot be held liable for any implementation or instituting of a policy that another Warden was potentially responsible for solely on the basis of the supervisory position he held after the incident. To the extent plaintiff alleges defendant Foulk is personally liable for the actions of his others based solely on his position as a supervisor, he fails to state a claim and the motion to dismiss should be granted accordingly.

2. Failure to State a Claim

Next defendants contend plaintiff's second amended complaint fails to state a claim against defendant Bertrand because there are no allegations that defendant Bertrand was personally involved in the deprivations alleged.

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and

---

[2] Plaintiff's inmate grievance was originally signed on September 24, 2012.

conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Here, plaintiff has alleged minimal facts to support his claim. The only allegations specific to defendant Bertrand, are allegations that as the Chief Food Manager, he is responsible for providing wholesome, nutritionally balanced diets for all of the inmates. Plaintiff also makes general allegations as to all of the defendants named in the second amended complaint, of which defendant Bertrand is only one of five.[3] These general allegations are rather conclusory, including that the "[d]efendants collectively instituted and/or ignored policies to utilize nonapproved [sic] food substitutions and/or lack thereof, which deviated from the CDCR standardized menu guidelines." See SAC, Doc. 21 at 9-10. Plaintiff then alleges, again without specifying which defendants, that the defendants were acting within the scope of their duties when they reviewed and ordered food to be purchased, planned the foods to be served, and that all of the defendants had a responsibility for the food service operations at HDSP and were prohibited from intentionally serving meals deficient in vitamins and minerals.

These general and conclusory allegations are insufficient to state a claim against defendant Bertram. There are no allegations explaining how defendant Bertram was personally involved in any of the decision making process. Rather, plaintiff appears to rely on defendant Bertram's position as "Food Service Manager" to presume that he was involved in the decisions as to what food was served, what policies were made, and/or how those policies were implemented. As set forth above, vague and conclusory allegations as to an individual's involvement in the alleged violations are insufficient to state a claim. To the extent plaintiff includes defendant Bertram solely based on his presumably supervisorial position, "plaintiff must

---

[3] Three of the named defendants were dismissed from this case at screening for failure to state a claim. See discussion below.

7

plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 129 S.Ct. at 1948. The facts alleged in the second amended complaint are insufficient as plaintiff fails to plead personal involvement of defendant Bertram in any alleged constitutional violation.

3.  Official Capacity

To the extent plaintiff names either defendant in his official capacity, the Eleventh Amendment prohibits federal courts from hearing suits brought against a state both by its own citizens, as well as by citizens of other states. See Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991). This prohibition extends to suits against states themselves, and to suits against state agencies. See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A state's agency responsible for incarceration and correction of prisoners is a state agency for purposes of the Eleventh Amendment. See Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam); Hale v. Arizona, 993 F.2d 1387, 1398-99 (9th cir. 1993) (en banc).

The Eleventh Amendment also bars actions seeking damages from state officials acting in their official capacities. See Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1995); Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam). The Eleventh Amendment does not, however, bar suits against state officials acting in their personal capacities. See id. Under the doctrine of Ex Parte Young, 209 U.S. 123 (1908), the Eleventh Amendment does not bar suits for prospective declaratory or injunctive relief against state officials in their official capacities. See Armstrong v. Wilson, 124 F.3d 1019, 1025 (9th Cir. 1997).

Thus, to the extent the complaint seeks damages from either defendant based on their official capacity, the motion to dismiss should be granted based on Eleventh Amendment immunity.

/ / /

/ / /

4.      Injunctive Relief

To the extent plaintiff names the defendants in their official capacity seeking injunctive relief, the defendants argue the requested relief is moot as plaintiff has been transferred to another institution and there is no indication that he will be transferred back to HDSP at any time in the future.

Where a prisoner is seeking injunctive relief with respect to conditions of confinement, the prisoner's transfer to another prison renders the request for injunctive relief moot, unless there is some evidence of an expectation of being transferred back. See Prieser v. Newkirk, 422 U.S. 395, 402-03 (1975); Johnson v. Moore, 948 F.3d 517, 519 (9th Cir. 1991) (per curiam). Over the course of this action, plaintiff has filed a few notices of address changes; the latest notification was in December 2016, wherein he notified the court that he had been transferred to California Institute for Men, where he appears to remain at the present time. Therefore, even to the extent that plaintiff names the defendants in their official capacity, and is not barred from seeking injunctive relief under the Eleventh Amendment, the request for injunctive relief has become moot as plaintiff is no longer housed at HDSP.

            5.      Failure to Exhaust

Alternatively, defendants move to dismiss plaintiff's complaint for failure to exhaust his administrative remedies. The defendants contend that the claims raised in the second amended complaint were not properly exhausted as the inmate grievance plaintiff filed did not contain the same claims as he states in this case until plaintiff reached the second administrative level.

Plaintiff attached to his second amended complaint a copy of the institution's decisions in response to his inmate grievances at all three levels. He did not, however, attached a copy of the actual grievances he filed. Defendants have provided a copy of the grievances plaintiff filed at each level of the administrative process. As these documents were referred to by plaintiff in the complaint, and a portion provided therein, the court may consider them in

addressing the motion to dismiss. See Branch, 14 F.3d at 454

As set forth above, a defendant may raise the issue of exhaustion in a motion to dismiss only in the rare event the failure to exhaust is clear on the face of the complaint. See Albino, 747 F.3d at 1168. As the exhaustion documents are attached to and referred to by the plaintiff in the complaint, the issue of exhaustion is clear on the fact of the complaint, and a motion to dismiss properly addresses the issue.

At the first level, it was determined that plaintiff's request for reasonable modification or accommodation did to not meet the criteria for an ADA appeal, was converted to a Health Care Appeal. In his inmate grievance, plaintiff requested, *inter alia*, more fresh fruits and vegetables to assist him in remaining a non-insulin dependent diabetic. The inmate appeal was denied by the institution at the first level, stating that plaintiff's request for more fresh fruits and vegetables was not medically indicated at that time. At the second level, plaintiff modified his claim slightly, stating the prison diet was not in compliance even for inmates without chronic maladies, was not in compliance with the regulations, and lacked fresh fruits and vegetables. At the second level, the institution acknowledged plaintiff's claim of non-compliance, but stated "HDSP offers a heart healthy, 2700-2900 calorie, 30% fat, 4gm sodium diet. The CDCR menu purposefully contains an average of 300-400 calories per day more [than] required by the average person. This calorie buffer allows inmates to choose not to eat certain foods without compromising nutritional health. Diabetic inmates are expected to select foods from meals offered to conform to diabetic dietary restrictions." (SAC, Doc. 21, Ex. C). Finally, at the third level, plaintiff stated HDSP has a medical responsibility to ensure diabetics with a nutritionally balanced diet with correct specified food portions, that HDSP was not adhering to the regulations, was neglecting to follow CDCR Food Service guidelines, and used unsanctioned foods services procedures. At the third level, the institution again denied plaintiff's claim, stating there is no medical indication for a specialized diet, that CDCR provides patient-inmates with meals based on a standardized master menu consistent with a CDCR Heart Healthy diet,

which eliminates the need for most prescribed diets.

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted.

The Supreme Court also held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits. 548 U.S. 81, 89-96 (2006). Thus, exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 90. Partial compliance is not enough. See id. Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims. See id. at 90, 93. The Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court." Id. at 94.

A prison inmate in California satisfies the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of

Regulations. In California, inmates "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The inmate must submit their appeal on the proper form, and is required to identify the staff member(s) involved as well as describing their involvement in the issue. See Cal. Code Regs. tit. 15, § 3084.2(a). These regulations require the prisoner to proceed through three levels of appeal. See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7. A decision at the third formal level, which is also referred to as the director's level, is not appealable and concludes a prisoner's departmental administrative remedy. See id. Departmental appeals coordinators may reject a prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive appeals, use of improper language, failure to attach supporting documents, and failure to follow proper procedures. See Cal. Code Regs. tit. 15, §§ 3084.6(b). If an appeal is rejected, the inmate is to be provided clear instructions how to cure the defects therein. See Cal. Code Regs. tit. 15, §§ 3084.5(b), 3084.6(a). Group appeals are permitted on the proper form with each inmate clearly identified, and signed by each member of the group. See Cal. Code Regs. tit 15, § 3084.2(h).

Defendants contend plaintiff failed to properly exhaust his administrative remedies as he modified his claim at the second level, and thus did not follow the proper procedures to properly exhaust his claim. Specifically, California Code of Regulations, Title 15, Article 8, § 3084.1(b) provides that administrative remedies shall not be considered exhausted "relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602."

Plaintiff contends he did exhaust his administrative remedies, as he received a decision from the Third Level. The undersigned agrees. While the defendants' argument may technically be correct, pursuant to the Ninth Circuit's opinion in Reyes v. Smith, where the prison officials deny the inmate grievance on the merits, despite the inmate's failure to comply

with all procedural rules, the inmate has exhausted his administrative remedies. See 810 F.3d 654, 657 (9th Cir. 2016). Therefore, the undersigned does not find the plaintiff has failed to exhaust his administrative remedies.

      6.      <u>Leave to Amend</u>

As stated above, if a motion to dismiss is granted, leave to amend must generally be granted "[u]nless it is absolutely clear that no amendment can cure the defects." <u>Lucas v. Dep't of Corr.</u>, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); <u>see also</u> <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc). "The Federal Rules of Civil Procedure state that leave to amend 'shall be freely given when justice so requires.' The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court, which may deny leave to amend due to . . . repeated failure to cure deficiencies by amendments previously allowed . . ." <u>Leadsinger, Inc. v. BMG Music Publ'g</u>, 512 F.3d 522, 532 (9th Cir. 2008)(internal citations omitted).

Here, plaintiff filed an amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(1), prior to the court conducting its screening. See 28 U.S.C. § 1915A(a). Plaintiff's amended complaint was dismissed with leave to amend upon screening. In the order dismissing plaintiff's amended complaint, he was specifically informed as to the defects in his amended complaint including the lack of factual allegations relating to the defendants, and the requirements to state a claim against a supervisor. Plaintiff failed to cure the defects as discussed above. Similarly, the opposition to the motion to dismiss fails to provide additional facts to indicate that he would be able to meet his burden to allege sufficient facts to state a claim if he was to be provided additional leave to amend. It therefore appears plaintiff is either unable or unwilling to plead sufficient facts to state a claim. Thus, further leave to amend should not be granted and this case should be dismissed.

**III.    OTHER DEFENDANTS**

Finally, defendants have requested the court review the undersigned's prior orders

according to Williams v. King, 875 F.3d 500 (9th Cir. 2017).  Pursuant to the Eastern District of California Local Rules, this case was not assigned to a District Judge when the case was filed. However, prior to service authorization of the defendants, plaintiff had consented to Magistrate Judge jurisdiction.  Based on plaintiff's consent, the undersigned issued orders dismissing several defendants at screening for failure to state a claim (Docs. 22, 31).  In light of the Ninth Circuit's recent decision regarding consent cases, the undersigned finds good cause to grant defendants' request.

### IV. CONCLUSION

Based on the foregoing discussion, the undersigned finds that defendants' motion to dismiss should be granted without further leave to amend.

Accordingly, it is hereby recommended that:

1. Defendants' motion to dismiss (Doc. 38) be granted;
2. Defendants' request for ruling (Doc. 48) be granted;
3. This action be dismissed, without further leave to amend; and
4. The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 15, 2018

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE